Spurgeon *v.* Worley, Sheriff, *et al.*

(*Knoxville*, September Term, 1935.)

Opinion filed Feb. 17, 1936.

THOS. E. MITCHELL, J. H. CHALKLEY, J. H. WINSTON, J. R. SIMMONDS, LEE FORSTER MILLER, JR., ROBT. L. TAYLOR, and WM. E. MILLER, all of Johnson City, for Jordan Spurgeon.

CANTOR & CANTOR and McKINLEY GREEN, all of Johnson City, for defendant in error Worley and others.

MR. JUSTICE COOK delivered the opinion of the Court.

The relator, Jordan Spurgeon, sued out the writ of *habeas corpus* to test the legality of his restraint by the judgment of a justice of the peace. The trial judge held that the act, creating a special court for Johnson City with exclusive jurisdiction in misdemeanor cases, was invalid in so far as it deprived justices of the peace of jurisdiction and remanded the relator to custody. He appealed, and the cause is here for review upon assignments of error.

The act in question is chapter 352, Private Acts of 1935,

which confers upon the city court of Johnson City original jurisdiction over all criminal cases except such as are brought to trial by indictment or presentment. Any person brought before the court charged with a misdemeanor, so the act provides, may be fined not more than $50. It further provides:

"In felony cases the Court shall act as a committing Court as now provided by law for justices of the peace. In misdemeanor cases requiring a trial by jury the court shall act as a committing court under the conditions and regulations herein provided.

"In all other misdemeanor cases the Court is empowered to hear the evidence and render judgment without a jury, and such judgment shall be final unless appealed from as herein provided.

"In misdemeanor cases in which, from their nature, there is a right of jury trial, the defendant may demand a jury at or before the hearing, and in such event the court shall hear the evidence and if there is probable cause to believe the defendant guilty shall commit such defendant to the circuit court of Washington County at Jonesboro for trial. In such cases it shall be the duty of the judge of the court before hearing such case to inquire of the defendant if he wishes to demand a trial by jury. If there is not a demand for a jury, the court shall try the case and render judgment, whether discharging the defendant, or fixing a penalty or punishment as provided by law, or committing the defendant to a jury trial in the circuit court of Washington County at Jonesboro, when, in the discretion of the court, a jury trial is required by public policy and/or in the interest of justice." Section 3.

It is insisted that the act contravenes article 1, section

8, article 11, section 8, article 6, section 1, and article 6, section 15, of the Constitution. Article 6, section 1, provides:

"The judicial power of this State shall be vested in one Supreme Court, and in such Circuit, Chancery and other inferior courts as the Legislature shall, from time to time, ordain and establish, in the Judges thereof, and in Justices of the Peace. The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary. Courts to be holden by Justices of the Peace may also be established."

This provision of the Constitution, and no other, relates to the jurisdiction of the justices of the peace. Article 6, section 15, merely provides for the division of the state into counties and civil districts, and that there shall be two justices of the peace from each civil district, except those including county towns to be elected by the people of each civil district with jurisdiction coextensive with the county. That provision of the Constitution does no more than recognize the office of justice of the peace as it existed at common law. The jurisdiction of justices of the peace is left to statutory regulation.

The broad power conferred by article 6, section 1, upon the Legislature to establish courts necessarily conveys power to define their jurisdiction and to transfer jurisdiction from existing courts, including the courts of justices of the peace, to the newly created court. Without such power a special court could serve no purpose. It has been common practice in the legislative history of the state to transfer jurisdiction from existing courts to special courts established to meet changed conditions produced by concentration of population and of business.

In the briefs, counsel refer to discriminatory features

of the act as impairing the rights of justices of the peace, or to provisions of the act that discriminate as between justices of the peace of Johnson City and of others in the state.

While the office of justice of the peace is recognized by the Constitution, none of its provisions endow the office or its incumbents with judicial power or vested rights, and article 1, section 8, and article 11, section 8, of the Constitution impose no restraint upon the legislative authority conferred by article 6, section 1, to create courts and define their jurisdiction or to transfer jurisdiction from one court to another.

While the act is not void because discriminatory as between justices of the peace of Johnson City and those elsewhere in the state, it violates article 1, section 8, of the Constitution, which provides:

"That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land."

Other constitutional provisions guarantee trial by jury upon indictment or presentment, and that right is assured in all other counties of the state. The right of trial by jury is the right as it existed upon adoption of the Constitution. *Trigally* v. *Mayor, etc., of City of Memphis*, 6 Cold., 382.

As said in *Trigally* v. *Mayor, etc., of City of Memphis* and other cases, before the Constitution divers actions between private persons and prosecutions by the state for small offenses were triable without a jury. The small offenses referred to by way of illustration in those cases were hunting and fishing on Sunday, gaming, drunken-

ness, and fornication, punishable by fine of from five to ten shillings, the equivalent of 62½ cents to $1.25. These are referred to in the cases to illustrate or clarify the definition of small offenses, punishable as such under antecedent statutes, chapter 14, Acts of 1741, Scott's Code, 54; chapter 8, Acts of 1799, Scott's Code, 639.

By the last act referred to the punishment for wagering and other offenses was fixed at a fine of from five to ten dollars. Nothing in our Penal Code or in our decisions distinguishes between petty misdemeanors and other misdemeanors. Under our Code, any misdemeanor, by force of circumstances, may, in its consequences, approximate a felony. In many cases the punishment inflicted for misdemeanors may be, and often is, as severe as the punishment in lower grades of felony. The acts of persons in more than two hundred instances are denounced by statute as misdemeanors in Tennessee, and there is no clear distinction made between small offenses and misdemeanors of higher degree. By many statutes the maximum fine is prescribed at exceeding $50, some running as high as $1,000. By section 10755 of the Code, acts prohibited by statute without penalty imposed are declared misdemeanors, punishable, under section 10756 of the Code, by imprisonment in jail for not more than a year and by fine not exceeding $1,000, according to the discretion of the court. When statutes prescribe a minimum fine of less than $50 and a maximum fine of more than $50, only a court and jury can assess the punishment. *State* v. *White*, 132 Tenn., 203, 177 S. W., 478. See *Metzner* v. *State*, 128 Tenn., 45, 157 S. W., 69.

When jurisdiction is conferred upon a court created under article 6, section 1, of the Constitution, the jurisdiction must be defined so as not to leave the question

open to inquiry and determination by the newly created court upon the court's consideration of public policy. Under the act in question, jurisdiction over misdemeanor cases triable in the Johnson City court is not limited or otherwise defined than by the broad statement that in misdemeanor cases requiring trial by jury the court shall act only as a committing court, and in all other misdemeanor cases the court is empowered to arraign upon the original warrant, hear the evidence, and render judgment without a jury, or commit-the defendant to a jury trial when, in the discretion of the court, a jury trial is required by "public policy and/or in the interest of justice."

As said in *State ex rel. Ward* v. *Murrell,* 169 Tenn., 688, 90 S. W. (2d), 945, the Legislature cannot, in creating a special court, or by transferring jurisdiction from one court of the locality to another, prescribe a procedure by which citizens under jurisdiction of the special court would be deprived of the right of arraignment upon indictment or presentment and trial by jury. That right assured to citizens of all other counties in the state could not be denied citizens within the jurisdiction of the special court. By this act the Legislature restricted trial by jury in Johnson City and empowered the special court to proceed summarily upon the warrant and punish for misdemeanors by the imposition of fine or imprisonment. No good reason can be conceived for subjecting citizens of Johnson City to arraignment without indictment and trial without jury contrary to the general law.

Another infirmity in the act is the broad generalization of the court's jurisdiction. By that generalization the character of offenses in which the accused could not claim the right of trial by jury under the Constitution

would be difficult to distinguish unless it be said that the act confers such jurisdiction over all offenses punishable by a fine of $50 or less, which are comparatively few.

In most misdemeanors the minimum punishment is less than $50, but ranges to a maximum of more than $50. It cannot be said that the court could look to the facts, and, if the offense merited punishment less than $50, entertain jurisdiction, notwithstanding the statute prescribed a maximum exceeding $50. Such a provision of the act would be void because it subjects citizens to a trial without indictment or presentment and without a jury, contrary to the law of the land. See *State* v. *Schlitz Brewing Co.*, 104 Tenn., 715, 738, 59 S. W., 1033, 78 Am. St. Rep., 941; *Scopes* v. *State*, 154 Tenn., 105, 289 S. W., 363, 53 A. L. R., 821; *State* v. *White, supra. Upchurch* v. *State*, 153 Tenn., 198, 281 S. W., 462.

The power of the Legislature to create courts of special jurisdiction is unquestioned, but in exercising the power procedural law applicable in the court could not be made discriminatory. The Legislature may create a special court and transfer to it criminal jurisdiction formerly exercised by justices of the peace, but could not legally clothe the court with power to try without a jury contrary to procedure in courts of general criminal jurisdiction throughout the state.

A statute applicable to the entire state would be necessary to confer jurisdiction upon the courts, whether a special court or the courts generally, or justices of the peace, to try small offenses without a jury. To that end it would seem necessary or advisable to classify misdemeanors by a general law distinguishing petty and high misdemeanors and to limit the punishment in petty misdemeanors to a fine of $50 or less, without imprison-

ment, in order to conform with the law so well stated in *State* v. *White, supra.* A statute conferring power to try small offenses without a jury would not be discriminatory if the jurisdiction was general, that is, applicable to all within the state. *Trigally* v. *Mayor, etc., of City of Memphis, supra.*

But this act which confers power upon this special court to determine its jurisdiction by making its own classification of misdemeanors, and to arraign without presentment or indictment and try without a jury, is contrary to the law of the land. For that reason, it is our duty to declare it void.

Affirmed.